**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ASIA MONE'Z WILLIAMS<br>9071 Mill Creek Road, Apt. # 2803<br>Levittown, PA 19054<br><br>Plaintiff,<br><br>v.<br><br>ONEWELL, LLC d/b/a ONEWELL HEALTH CARE<br>2141 Oregon Pike<br>Lancaster, PA 17601<br><br>Defendant. | CIVIL ACTION<br><br>NO.: ____________________<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Asia Williams (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by OneWell, LLC d/b/a OneWell Health Care (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.) and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. OneWell, LLC d/b/a OneWell Health Care is a community-based healthcare organization that provides comprehensive in-home and community support services for individuals with intellectual and developmental disabilities (IDD), autism, and complex care needs, with headquarters at the above-captioned address.

9. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11. Plaintiff was employed by Defendant as a Program Specialist for approximately 6 months, beginning on or about August 25, 2025, until her unlawful termination (discussed further *infra*) on or about February 19, 2026.

12. Plaintiff worked from Defendant's 2080 Cabot Blvd. W., Suite #200, Langhorne, PA 19054 location.

13. Plaintiff was primarily supervised by IDD Team Lead, Nadeerah Adams (hereinafter "Adams") and generally by Regional Manager, Taylor Hirocheck (hereinafter "Hirocheck").

14. Throughout Plaintiff's employment with Defendant, she was a very hard-working employee who performed her job well.

15. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to diabetes (and associated conditions/complications).

16. Additionally, in or about January of 2026, Plaintiff began to feel ill and dizzy. As a result, she went to the Emergency Room ("ER") on or about January 18, 2026, and was diagnosed with vertigo.

17. As a result of her aforesaid health conditions, Plaintiff suffers from dizziness, blood sugar imbalances, loss of balance, and nausea, which (at times) interfered with her ability to perform some daily life activities such as walking, driving, and working (among other daily life activities).

18. Despite Plaintiff's aforesaid health conditions and limitations, she was able to perform her job duties well; however, she (at times) required some reasonable medical accommodations (discussed further *infra*).

19. Following her trip to the ER, on or about January 18, 2026, Plaintiff provided Defendant's management with a doctor's note, stating that she was able to return to work on or about January 21, 2026.

20. At all times relevant herein, Defendant was aware of Plaintiff's serious health conditions as she discussed the same with Adams, especially in the context of suddenly being advised that she would need to check on a high-risk case over one hour each way (in Royersford, PA) from her primary location in Langhorne, PA.

21. Plaintiff advised Adams and Hirocheck that while she was being thoroughly diagnosed with and treated for her vertigo, it might not be safe for her to drive that far and risk having an accident.

22. Following her request for the very reasonable accommodation to refrain from driving longer distances while being evaluated by her physician, Plaintiff was eventually begrudgingly advised by Adams and Hirocheck that she would be taken off the longer distance case.

23. On or about January 20, 2026, Plaintiff provided management and Human Resources ("HR") representative, Jacquelyn Lambert (hereinafter "Lambert"), with a doctor's note.

24. The aforesaid doctor's note stated that while undergoing a neurological workup/evaluation, Plaintiff could return to light-duty work of "limit[ed] driving to no further than 15 miles per day one way as driving is a trigger for patient's medical condition," which would "be

in effect for no more than 60 days" – a very reasonable and temporary accommodation under the ADA.

25. Thereafter, on or about January 22, 2026, Plaintiff received an email from Lambert that her accommodation would be granted for approximately 60 days, which would end on or about March 22, 2026.

26. Nonetheless, Adams exhibited clear frustration with Plaintiff's health conditions and requested accommodations while also perceiving Plaintiff as being too disabled to perform her job duties, stating "if something happens, and you pass out, you could be a liability."

27. Adams also began to treat Plaintiff in a rude and condescending way, criticizing her every move, and raising her voice at Plaintiff.

28. Prior to Plaintiff notifying Adams about her vertigo and requesting accommodations, she had only ever received accolades and was informed that she was doing a great job.

29. Additionally, in or around early February of 2026, Plaintiff was having issues with a co-worker. The co-worker had an attitude and erroneously believed that a certain DSP belonged solely to her, which was incorrect, as the DSP belonged to both Plaintiff and her co-worker for the cases they worked on.

30. Plaintiff thereafter requested a meeting with Adams, as the aforementioned co-worker had tried to solely claim the above referenced DSP multiple times.

31. During the aforementioned meeting with her co-worker and Adams, the co-worker lied, and when Plaintiff called the co-worker out on her lies, Adams berated her for calling her the co-worker a liar. Adams then forced both Plaintiff and her co-worker to apologize, despite that Plaintiff had done nothing to apologize for.

32. Thereafter, on or about February 12, 2026, Adams suddenly and abruptly texted Plaintiff that she needed to meet Adams purportedly for her 90-day evaluation, which should have occurred back in November of 2025 (but which Adams kept cancelling).

33. Notably, Adams had made no mention of any evaluation until after she was put on notice of Plaintiff's aforesaid health conditions and need for reasonable accommodations.

34. During the alleged evaluation meeting, Adams was aggressive, hostile and claimed for the first time that Plaintiff had performance issues.

35. Specifically, the evaluation stated that "when there are changes in c2s [Plaintiff] may become overwhelmed and haves [sic] slight push back," and "if there [sic] a change within a case regarding hours and scheduling [Plaintiff] may also become overwhelmed with the responsibility."

36. Plaintiff perceived Adams' aforementioned evaluation comments as a clear reference to the above-referenced high-risk case that she was unable to take on due to its distance from her main facility as a result of her aforesaid health conditions – a reasonable accommodation that Defendant could and did grant.

37. Plus, all employees, including Plaintiff, had all been advised to ask questions with their c2s system if they were confused or needed more information – which is all that Plaintiff did in a polite and respectful way by utilizing a chat specifically for that purpose in Microsoft Teams.

38. Nonetheless, it is clear that Adams issued Plaintiff the punitive evaluation in retaliation for Plaintiff's aforesaid disabilities and requested accommodations.

39. When Plaintiff then questioned this to Adams very calmly in the February 12, 2026 meeting, Adams became belligerent, raised her voice at Plaintiff, and eventually stated that she was "done talking to [Plaintiff]" – when all Plaintiff had done was ask Adams for more details.

40. As a result of the aforesaid hostile and clearly retaliatory, alleged evaluation meeting with Adams, Plaintiff reached out to HR Administrator, Jennice (last name unknown, hereinafter "Jennice"), but Plaintiff's concerns weren't properly addressed, and then Jennice stopped returning Plaintiff's phone calls.

41. The following day, on or about February 13, 2026, Adams was out of the office, so Plaintiff reached out Hirocheck to inform her that Adams had become very hostile, harassing, and combative to Plaintiff recently (after requesting accommodations), to which Hirocheck simply replied that it she had not experienced that with Adams.

42. Hirocheck further stated that Plaintiff should consider looking for another job – instead of meaningfully addressing Plaintiff's complaints – and advised Plaintiff to think it over during the weekend.

43. Plaintiff thereafter sent an email outlining her aforementioned concerns, and then met with the Hirocheck, Adams, and HR on or about February 17, 2026.

44. At the aforementioned February 17, 2026 meeting, Plaintiff objected to Adams' behavior and attitude toward her, as well as her aggressive and raised voice, but Plaintiff was simply informed that Adams could treat her that way as her manager, and that Plaintiff was likely to be more micromanaged in the future.

45. Plaintiff had also specifically verbally informed management at the February 17, 2026 meeting that she believed Adams' behavior stemmed from Plaintiff's aforesaid health conditions and requests for reasonable accommodations (*i.e.*, medical leave and temporary light duty work of no driving more than 15 miles each way).

46. Then ***just two days later***, on or about February 19, 2026, despite having no prior disciplinary strikes in her record, Plaintiff was suddenly issued 25 points for allegedly "challenging

authority in a destructive manner" for simply asking Adams calmly for more details during her February 12, 2026 evaluation.

47. Incredulously, then ***later that same day***, after 4 p.m., Plaintiff was suddenly issued another 25 points for "allegedly sabotaging management's efforts," which was incredibly vague and nonsensical.

48. Because management stacked two pretextual writeups in close proximity, equaling 50 points, Plaintiff was then abruptly terminated.

49. There is no doubt that Plaintiff's disabilities and requested medical accommodations were motivating and/or determinative factors in her termination, as she was considered an excellent employee until she went out on medical leave and/or requested light duty – ***two very reasonable medical accommodations***.

50. Defendant failed to properly accommodate Plaintiff by issuing her pretextual discipline for requesting and/or utilizing reasonable medical accommodations and then utilizing the same as a means to terminate her.

51. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and ultimately terminated because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations (discussed *supra*); and (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

52. Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

55. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

56. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require some reasonable medical accommodations at times.

57. Plaintiff requested reasonable accommodations from Defendant including but not limited to medical leave and the ability to perform temporary light-duty work.

58. Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

59. Plaintiff complained of/objected to the aforementioned instances of discrimination, disparate treatment, hostile work environment, and retaliation on multiple occasions but her concerns were not properly addressed.

60. Instead, Plaintiff was terminated from her employment with Defendant on or about February 19, 2026, in very close proximity to her requests for/utilization of reasonable medical accommodations and her complaints of unfair treatment as a result of the same.

61. Defendant failed to properly accommodate Plaintiff by issuing her pretextual discipline for requesting and/or utilizing reasonable medical accommodations and then utilizing the same as a means to terminate her.

62. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and ultimately terminated because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations (discussed *supra*); and (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

63. Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

64. These actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (Attn. No. 91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: September 20, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Asia Mone'z Williams | : | CIVIL ACTION |
| v. | : | |
| Onewell, LLC d/b/a Onewell Health Care | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 9/21/2026 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________ Judge:____________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WILLIAMS, ASIA MONE'Z

**(b)** County of Residence of First Listed Plaintiff: Bucks

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

ONEWELL, LLC D/B/A ONEWELL HEALTH CARE

County of Residence of First Listed Defendant: Lancaster

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***: ADA (42USC12101)

Brief description of cause: Violations of the ADA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: 9/21/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______